counsel the appellant you may proceed Randy back rec for appellant David Mazet your honor this ERISA benefit case is unique in in a few ways mr. Mazet worked in the oilfield industry almost all his life in oil production mostly offshore at the time of his accident he was offshore in Angola and he lost the ability to work in his job what we're here today about is the disability policy that his employer Halliburton provided whether or not he is entitled to benefits beyond the own occupation two-year period yes and the specific issue of course is whether the abuse of discretion standard of review applies or the de novo standard and I'd appreciate it if you look at this or help us sort this out under the language of the abatis case I'll certainly try it that's how it's pronounced abatis I was a body I've always been as a device yes at the threshold the standard review is key I have not found and I am not aware of any case in any circuit where a plan administrator has completely failed to process an administrative appeal just totally ignored it and later was granted discretionary abuse of discretion review by the district court even before we get there what is the language of the plan in terms of bestowing discretion upon the plan administrator none it's reserves the right language yes it is the satisfactory proof of loss language reserves the right proof of loss provision status does that satisfy that this is satisfy the unambiguity requirement of the note of the discretion not according to this circuits case in Kearney what what case Kearney it's cited in the brief but there's about five or six cases I believe that have examined similar language which basically is referred to as the satisfactory proof of loss language yes they did your honor in fact at the rule 16 conference counsel for how for heart and Hartford stipulated on the record that the plan did not contain discretionary language and that therefore the case would be reviewed de novo now what happened to that stipulation was it brought to the court's attention at the appropriate time when the court was making the decision regarding the standard of review well that stipulation was entered into the order of the court in the scheduling order and then it was about a year later when the motions were filed the plaintiff's motion was titled de novo review and right but did anybody say wait hold on time out we agreed to de novo review your honor that that didn't happen until after the remand unfortunately well that was just overlooked by everyone in the court including the judge and and even the plaintiff's attorney unfortunately that's true your honor well but our the case law says that it is the law of the case once it's entered into the orders well it's not the law of the case when the case is decided on it without objection on a discretionary standard well there was a lot of objection on the discretionary standard your honor but not based on the stipulation the stipulation was never brought up again as far as I could tell and it was there was no objection to it until the very end and and it was all over by that time right but the underlying reason for the stipulation never changed which is that there is no discretionary language in this plan the ninth circuit case law is clear on that well what magic language would would have to be in a plan for it to be discretionary I mean you don't have to have any magic words well I think it's the there's several cases that have addressed that basically said it's not hard for a plan administrator to write we have discretion to determine eligibility for benefits but you can't use the word so clearly because the state administrators of the insurance plans don't like the word discretion that it's it's it's persona non grata in the administrative state plans of administering insurance contracts well I your question was what language what language would you know what is necessary for a plan administrator to decide decides that they reserve the right to review the proof of loss that that we have discretion to decide the actual word discretion if they don't use the word discretion how can they how can discretion be conferred without using the word discretion well there are no magic words the court has said however we have the rights to determine eligibility and to to interpret the the plan those are the the words in effect that the court has required and without those words generally the cases have held that it is not an unambiguous grant of discretion you focus on the words proof satisfactory as being as being ambiguous enough to defeat the abuse of discretion yes it is ambiguous the court has ruled that that is ambiguous in prior cases that it well not the exact words why shouldn't we distinguish the reserve the right language from prior Ninth Circuit language about proof of loss I mean that that that reserves the right it sounds very discretionary to me I don't know about you well discretionary to do what is the question to decide the claim to do to to decide that the claim is bonafide well then I I would submit and I believe the Ninth Circuit case law to this point is that that is not sufficient that is that is not unambiguous that it does not put the claimant on notice that that is in fact the discretion being retained by the plan administrator i.e. the discretion to decide eligibility and right to benefits and to interpret the plan because none of that's in this plan so you make a distinction between reserving the right to determine the modicum of proof that's been provided and the reservation of right to determine eligibility for the plan is that is that I think you're making correct this language simply says they have the right to approve the proof of loss which is a form that is provided by the company to the claimant that's all that is is just a form and it's filled out by the claimant and the claimant's position filled out correctly as opposed to whether or not the person is entitled to benefit absolutely that's the distinction you're making that's the distinction that there is a proof of loss form that the company provides to the claimant and the claimant's physician and they have the right to determine whether that form is correctly filled out turning to a little different subject here on the appeal process here do you you agree that the plane here lacked the deem denied language that was in Jibion Jibion I don't know how to pronounce it exactly Jibion yeah Jibion and the following case on point Gatti which was relied upon by the district court in this case was the case yeah and and this plan did not have any deem denied language it did not state deem denied it had time limits well had time limits but Jibion the crucial word was deem denied right but but more crucial I would submit is the fact that under Jibion and Gatti ultimately there was a decision rendered it was late but there were decisions rendered in both Jibion and Gatti this case there was never a decision rendered therefore those cases are instructive but not despotic decision rendered initially but just on appeal there was no decision right there was never an administrative appeal decision rendered and under under Abati it seems clear and I believe that the purpose the intent of the Abati panel and I I understand that one of the judges here is in that on that panel so I hope hope I'm not speaking out of beyond the line here but it seems like there was a recognition that there might have been some confusion between between Jibion and Gatti and the Abati court specifically said generally we review de novo where the panel administrator has failed to exercise discretion if there's no discretion exercise there's nothing to defer to well some words that you're you've missed because I I read Abati and it said in the in in this in the Leraire case it's something about unusual case it it it was not across the board it had something about only in a rare case it would do that I didn't see anything so strange or rare rare about this well actually in fact that that when they say the rare case they say that's the exception to the general rule that's the way I interpret the word rare well I would submit that not that totally ignoring an administrative appeal you know is rare it doesn't happen very often and that language in Abati comes under the heading of what to do when there is a serious procedural administrative error by the plan administrator and I don't think that was the issue that when the plan completely fails to I think you would have a stronger argument the plan didn't act at all but the plan exercises discretion at least in the initial decision so I'm not sure well there was discretion exercise in that I mean there was a decision made I won't say exercise discretion but there was a decision made by the company at one point they didn't just totally ignore the claim altogether if I may address the merits this case the sum and substance really boils down to a single number which is three thousand and thirty one dollars that is what Hartford claimed was the earnings potential for several jobs it identified as being readily available to Mr. Mazet however as the plaintiff attempted several times in the district court to present the actual data the DOL wage data that the that Hartford claimed it relied upon and each time and by the way that data was submitted in the administrative appeal that was ignored the 2001 was the most current data then in summary judgment we submitted the 2002 data to the court the Hartford's moved to strike that which was successful and then later on remand we submitted 2003 data that was also disregarded by the court that was an abuse of discretion this data was relied upon specifically by Hartford their claim file is clear they used 2001 OAS data wage data which they said they estimated and adjusted and extrapolated to 2003 well if that was true then the data should have supported that the actual data the actual data shows that that three thousand and three thousand dollars approximately apparently was just made up because it is hundreds of dollars beyond the actual data in terms of pardon you said beyond or is it below this gets a little confusing I'm sorry that the actual data was was actually for the jobs was higher you know a reasonable observer of the testimony of your client could could say that your client demonstrated a pattern of over a certain times any of overestimating his capacity to do jobs and at other times overemphasizing the the the disability that he suffered I mean there was a definite credibility determination that could easily be made by any administrator or even an administrative judge looking at that well I believe that the when you look at the totality of the administrative record it doesn't support that but there's a credibility determination has to be made as to whether or not his claims are reasonable an observer what the evaluation of his the restrictions that the client said he had and of the treating doctors who seem to change their position quite a bit well there was there were a few changes in the attending physician statements as his condition worsened well it was suspicious changes because there was a lot of changes but we're not there was no really documentation that that they could put their hands on as to why these are these changes that were made his except his his his complaints or whatever well dr. Armstrong noted in his record why the there were certain changes and he said specifically there was worsening in his knee the pain and the swelling in his knee it is true that he did overstate at times his ability to work he desperately wanted to go back to work and in the first year after his accident he wanted to go back to Halliburton and go back in the oil fields and he he thought he wasn't going to do it but he it worked out for a couple of weeks yeah he couldn't do it and there were a couple other times he tried to go work as a truck driver delivering milk he couldn't do that that didn't last the record is clear that he's he's limited sedentary work and he's limited to according to dr. Armstrong part-time sedentary work well well that's his claim I mean you know every claim has there's two sides every story but it's important your honor that to recall or to note that the physical capacity about analysis is not the issue the issue really is the so-called earnings potential just briefly I want quickly I want to address earnings potential it is totally unreliable ambiguous is not defined Hartford has defined it as the median wage for these jobs but that is I'm sorry absurd it is absurd to think that Mr. Mazet could go into any job with no skills and earn the median wage right off the bat that's just not possible your time is running we have time for just one more question yeah something which is of some interest to me could you explain why the the structural there should have been more testimony on the structural conflict that you say you were prohibited from demonstrating to to in the claim well it was mentioned it was mentioned in the complaint it was mentioned in the motion for summary judgment and it was mentioned we brought it up on remand that the DOL wage data was evidence of the conflict of interest affecting the decision the judge refused to hear it amazingly and that and that affected the discretion of the adjudicator the conflict yes it affected the decision can I reserve just a couple of seconds for okay am I up okay am I am I up now I said I'll give you a little time okay you've just about run out of time I know since you got your request in before the last second why we'll allow it. We'll hear now from the other side. Thank you. Good morning may it please the court my name is Susan Friedman I represent the Halliburton Long Term Disability Plan and Hartford Insurance company. The Hartford plan language did include abusive discretion standard of review language. It said that Hartford reserves the right to determine if or whether the proof of loss is satisfactory. How is that unambiguously unambiguous is the you know and that that has that doesn't to be ring clear. I mean it sort of it's up in the air you know it's it's you could argue that if you were on the other side equally you could argue both sides of that. So why is it and the rule is it has to be unambiguous. Let me make three points your Honor. The first two from the Abadi case. In the Abadi case the court said that discretion means as commonly understood the power or right to decide or act according to one's own judgment and that's precisely what reserves the right to decide if your proof of loss is satisfactory means. It doesn't say we reserve the right to determine if you are eligible for benefits. Well I think that's what if your proof of loss is satisfactory to me means and I would urge the court to look at footnote three of the Abadi case because in that footnote the court points out that there is no magic language and that that particular policy was drafted in 1992 and the court said under the then law of the circuit the plan in Abadi would be held by any administrator or any insurance company to be sufficient to reserve the power to make determinations on benefits. This policy was a 1998 policy. It was well before Abadi. It was well before Kearney. It was well before all of the decisions that this Court has rendered dealing with this particular issue and I believe that the footnote in Abadi says look back to when this was written. Why don't you put this to sleep? Why don't you just put the whole issue to sleep by putting something in the policy to the effect that the plan administrator has discretionary authority to grant or deny benefits under this plan? You don't have to be a drafting genius to put that in and you never you left it up in the air. If you would have had that it would have been unambiguous to me. Well, Your Honor, I believe you. You noted at one point in your questions to my opposing counsel about the concern with the word discretion. You know, the insurance company drafts the old, you know, you drafted it, contract of adhesion or whatever. You drafted this. He didn't draft it. But this is, again, a policy from 1998. This is before all of the language, the interpretation in one court after another. What's wrong with his interpretation that proof of loss is a piece of paper? It's a document. It's a form. But it's to determine whether this is satisfactory to me. If, whether your proof of loss is satisfactory, whether you've proved your loss to me, I'm reserving the right to decide whether you've proved your loss to me. But proof of loss is a different matter than proving you're eligible. Once you've proven you're eligible for disability benefits, then the amount of loss comes into play, arguably. Well, Your Honor, I, when you look at the Kearney decision and some of the others that interpret the words satisfactory and what that means, they say the question is satisfactory to whom? Is it satisfactory to the insurance company? Is it satisfactory to the hypothetical reasonable man? Who is it satisfactory to? There are different ways of interpreting. In this policy, it's I'm reserving the right to determine if, whether, this is satisfactory to me. Well, reserve the right, it seems to me to be the functional equivalent of that the proof must be satisfactory to Sun Life, which we held was not unambiguous. And if you say it has to be satisfactory to Sun Life, well, Sun Life would say I'm not satisfied with this. That's the closest, that's the closest language to our language. Our language is a little different. It has the whether. Perhaps something here that's the functional equivalent or maybe not even up to that standard of Sun Life. Again, Your Honor, I would urge you to go back and look at the Abadi footnote. This is 1998 language. And in 1998, this would have been thought by the insurance company to be sufficient to confer discretion. Why did the insurance company stipulate to do no more review then? Well, Your Honor, I believe that that was clearly a mistake. It was a mistake in the very early beginning. A mistake at the very beginning. It was a mistake that was never relied upon and never relied upon in any of the briefs. The issue of abusive discretion versus de novo was thoroughly briefed, was decided. There were numerous motions for reconsideration where this never came up. And besides, you can't stipulate to an issue of law. And this is really an issue of law. What is the appropriate standard of review for the Court? But physically what happened? Did you just sort of get lost in the proceedings? Because the stipulation was clearly there. There was the one lawyer who went over to the initial hearing was not the lawyer who handled the case throughout. And she made a mistake. That's what happens. There's a district court opinion here in one of the districts of California. Thiverg, I have here. I don't remember exactly. I think it was Hartford Insurance was involved in it. Exact same language as we have here. And I disagree with that decision, Your Honor, and you're the ones to decide. Let me go further, however, to the point of even if you do determine that de novo review applies, we meet all of the standards on this record, because you do have findings that are within the scope of the plan, findings that are clearly supported by the record and are not clearly erroneous by a long shot.  case of De Novo? Did you not? We did have a conflict, a structural conflict of interest. There was a conflict. And didn't the district court, it didn't give full latitude to proofs as to how significant that conflict was in the decision-making? The district court made two rulings in that regard, Your Honor. First, with respect to the underlying decision, the court said, no, you don't have a basis for saying that there is no wholesale and flagrant irregularity. You do have the structural conflict of interest, and there's nothing else to support that that was really a dispositive factor in the underlying decision. But later on, there was a remand. And the court used the old standard, the Atwood standard, instead of the Abadi standard when it was determined whether or not to do it. Because it was pre-Abadi. Exactly. So my point, shouldn't we remand it to the district court to apply the Abadi standard instead of the outdated Atwood standard? No, Your Honor, because there were motions for reconsideration specifically raising Abadi, and the court then determined that applying Abadi, he came to the same conclusion, that in fact, this was not an abuse of discretion on this record. He did But the problem is that the court would not allow all of the evidence on the potential conflict to come in to consider the extent of the Well, there are two points to that, Your Honor. First, there were two particular pieces of evidence. One, the evidence that was presented at the administrative level, which was a 2001 careerinfo.net report that came up with the proper number for 2001, that was before the court at the That was at the administrative appeal level? No, the administrative appeal was not decided. I would urge the court to look to the Cushman case that we cited in our supplemental citations, and Cushman says, when you have a nondecided administrative appeal, you still apply the abuse of discretion standard, you apply a healthy degree of skepticism, you consider the evidence that was submitted at the administrative level, that's what you want to appeal to, but you don't stop having the abuse of discretion standard. Are you open to throw around the administrative appeal? And I think that's Achilles' heel for the whole thing. Those are the two things that are the errors in this case, no question about it. I don't believe that those change the standard of review. But more importantly, that evidence showed what was the appropriate number for 2001. Later, there was a submission that was outside the administrative record with a number for 2002. The number for 2003 was a number that was excluded by the court, not under an abadie or abuse of discretion or any of those standards, but because of an evidentiary ruling, because on remand, he had asked, and the parties had briefed, and Mr. Mazet had agreed that the number 3103 was the appropriate number. The stipulation of de novo review. Well, this was a judicial estoppel determination, Your Honor. This was a, I'm saying, he came in and said, I disagree with the 3103 number because I have 2003 actual data from OES, and here it is. He came forward with that in a sur response at the very last minute after having debated and argued this for years, and the court said, you're too late, and you already stipulated and said that the 3103 number was the correct number. Judicial estoppel. I made a decision on what was the scope of remand based upon what you said, and it was that reason that kept out the 2003 number. That was an appropriate ruling and a ruling that should be reviewed by this Court for an abuse of discretion as an evidentiary ruling. So what you have in this record is a man who clearly was able to work, no question about that, was working, and the only question is whether he met his 60 percent of his pre-disability indexed earnings. You have a determination by Hartford that takes, you know, the late January, early February of 2003, takes the only numbers it has, i.e., the 2001 numbers, 2002 weren't done yet, and extrapolates to that and comes up with 3103 for 2003. If you look at the actual numbers that came in, not for whether or not there was an abuse of discretion, but for determining whether or not there was a structural conflict that really had an impact, as I believe this Court is entitled to do under Abadi and under Cushman. Verrilli, you know, there's a lot of credibility here. I myself, if I was adjudicating this, I don't know if I would have bought all of the plaintiff's claims and disabilities. I don't know. But it depends on who's adjudicating this matter. And I'm very concerned that he filed an administrative appeal and it was never adjudicated, never heard from again, and you had time limits here. The points that were made on the administrative appeal were that the partial disability language that was in the summary plan description should be applied. That was the point on the administrative appeal. That summary plan description was clearly a mistake because it says that even if it completely eviscerates the any occupation standard, it says if you are able to work but you don't make 60 percent, then you still get partial benefits.  Verrilli, I don't want to interrupt you on something that's as crucial. But once someone doesn't adjudicate administratively an appeal, there's not you don't go into the merits of the appeal. You, you, the decision is it's no longer an abuse of discretion because you don't exercise discretion. You're de novo. You do not look into the appeal to see whether or not it would have been successful or not. So my, my question to you is if you look at the, at the, at the law dealing with failure to exercise discretion, the answer is only one thing. We go into a, a de novo review because if you have discretion but do not exercise it, then you, you don't have discretion. Your Honor, I would have to go into the appeal to see whether or not it would have been successful or not. We don't want to hear, at least I don't, perhaps my colleagues do, that you would have prevailed on the appeal because that's, we don't know. I don't know. Your Honor, I, I would urge you to look at the Cushman ruling, which I believe is well-reasoned, and what it says is that you look at the underlying decision for abuse of discretion, because that's where discretion was exercised, and with respect to the appeal, you take into account all of the new evidence that was introduced and the arguments made in the appeal, and you can look at that. That's a district court decision, right? That's a district court decision. Here, the partial disability, A, was clearly wrong. There's nothing in the policy itself that says, if you don't make 60 percent, this is how we would calculate your benefits. There's not a way of deciding that. Number two, the, there was absolutely no evidence that was introduced that Mr. Mazzett relied on this summary plan description, and although this Court has not decided the need for reliance, the first, seventh, and eleventh circuits and a number of district courts in this circuit have said you do need to show that you relied on a summary plan description. If that was the insurance company's position to just rule on the administrative appeal and make all of those points. It should have. It didn't. And the third point is, Your Honor, that he does not meet the qualifications for any partial disability because he can earn 60 percent of his pre-disability income, and that goes right back to the underlying determination. If you look at the new data that he tried to put in, just for purposes of whether or not there was a structural conflict, whether or not it was biased, what you see is that in 2002, starting with your 3,103, which was Hartford's estimated number, the number it came up with, 2002, the OES mean number was 2,923, and the median, 2,804. Pretty close. This sur-response, this last number that they came in with, shows a mean number of 3,002 in terms of actual data and a median number of 2,901. It was really darn close. That small swing shows that there's not really a bias here, a real conflict of interest beyond a mere structural conflict. Hartford was estimating, did come up with its number in good faith. Further, Hartford made his decision based upon not some paper review of other doctors, but looked at his treating doctor. His treating doctor in September of 2002 said, you meet sedentary, light, or medium standard of work. You can qualify for all of those. After Mr. Abadi was reminded of the need to go into owning any occupant. I'm sorry. Mr. Mazat. Talking too fast. Let me ask you a question, to slow you down. Where in the record did the district court say that it would have made the same decision if it were considering the Abadi standard? We have three determinations and the, I believe it is excerpt of record 76. 76? Yes, 76. Going back to what the court relied on, it looked at the district court's, I'm sorry, it looked at the treating doctor's determination after Mr. Mazat was reminded about going to any occupation. His treating doctor came back with a report that said, no change in progress, no further deterioration, no change, but it said now we'll do the, only the sedentary or light categories. And Hartford only used sedentary and light categories for determining its 3103 number. It used what he admitted in his administrative appeal he could do. Do I hear you right that what you're saying that even under a discretionary or a plenary review, it would have been the same? Absolutely right. In other words, you're saying it was harmless error, but it was an error. Absolutely right. That's the way I read your argument. Absolutely right. I understand you the fact there was never any correlation with the conflict of interest issue. I'm sorry. With respect to the conflict of interest issue, there were two determinations on conflict. He said, number one, that there was no evidence that the underlying discretionary determination was biased, was wholesale and flagrant irregularities. He later asked for, directed a remand to take into account the 401k, because the policy said that regular monthly pay excludes fringe benefits or extra compensation. Hartford determined that. On that remand, the Court said, no, wait a minute, you should have taken into account the W2C you had. I believe that you are allowing your structural conflict of interest to be affected. This district court knows when to apply it, when not. Very well. Thank you, counsel. Your time has expired. Thank you. The deputy clerk, please set the clock for two minutes. We allowed the other counsel to go over time. Thank you very much, Your Honor, for that. The issue of the 98 policy, Your Honor, that simply is not an issue. They could have amended their policy at any time. And the fact is that they have continuously taken the position that the summary plan description is irrelevant. That's their word for it. The summary plan description is not irrelevant. That is the document, the only document that the claimant was ever provided. And that document contains no discretionary language in it. The ---- Counsel, what's your response to opposing counsel's reliance on the district court's determination that it would not have made a different decision, even if it were applying a body? Yes. The district court said that or held that a body was dicta. In terms of Jebion, that is found at document 66, page 3. So I don't really think that ---- I think it's 76, wasn't it? Document 76, page 3. The court said a body's description in dicta of Jebion does not overrule Gatti's express limitation of Jebion. But it also talked about a body, also the conflict of interest on page 4. It talked about the conflict of interest concept as well. I don't believe the district court ever made any findings or ruling on the conflict of interest. Each time it was brought up, the court basically, as I recall, was of the opinion that no evidence had been presented, of course, neglecting, I guess, the fact that we had presented the DOL wage evidence as conflict evidence. But that evidence was in the record. The main point, again, however, is that the 2003 estimated wage has no support in the record. They have admitted that. And the evidence that we tried to submit over and over again absolutely shows that that figure, 3103, has absolutely no relevance, no bearing whatsoever on the facts. But opposing counsel says that's a figure you agreed to, and you only tried to submit additional evidence too late. Yeah. The district court made an incorrect finding of fact, in a footnote, that somehow we had accepted the 3103. We never, ever did that. It would have been impossible to do that, because that was the subject of the summary judgment motion that the Court had already granted judgment to them on. We could not have waived it. It was already a judgment. What I said in my brief was that the 3103 was sufficient for purposes of the remand only in terms of the time frame. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Cowen, O'scannlain, Rawlinson